CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**,<br><br>       Plaintiff,<br><br>       v.<br><br>**Catherine L. Butler**;<br>**Geraldine R. Shirvanian**;<br>**Five Star Nutrition**, a California Corporation;<br>**Stephen Kings**; and Does 1-10,<br><br>       Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For Violations Of:** American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Scott Johnson complains of Defendants Catherine L. Butler; Geraldine R. Shirvanian; Five Star Nutrition, a California Corporation; Stephen Kings; and Does 1-10 ("Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

1

Complaint

2. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in December 2016.

3. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in February 2017.

4. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in May 2017.

5. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in June 2017.

6. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in August 2017.

7. Defendants Catherine L. Butler and Geraldine R. Shirvanian owned the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, in September 2017.

8. Defendants Catherine L. Butler and Geraldine R. Shirvanian own the real property located at or about 3241 and 3245 Folsom Blvd., Sacramento, California, currently.

9. Defendant Five Star Nutrition owned the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in December 2016.

10. Defendant Five Star Nutrition owned the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in February 2017.

11. Defendant Five Star Nutrition owned the Fivestar Supplements &

Complaint

Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in May 2017.

12. Defendant Five Star Nutrition owned the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in June 2017.

13. Defendant Five Star Nutrition owned the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in August 2017.

14. Defendant Five Star Nutrition owned the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, in September 2017.

15. Defendant Five Star Nutrition owns the Fivestar Supplements & Apparel located at or about 3241 Folsom Blvd., Sacramento, California, currently.

16. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in December 2016.

17. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in February 2017.

18. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in May 2017.

19. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in June 2017.

20. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in August 2017.

21. Defendant Stephen Kings owned the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, in September 2017.

22. Defendant Stephen Kings owns the Crown Precious Metals located at or about 3245 Folsom Blvd., Sacramento, California, currently.

Complaint

23. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

24. The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

25. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

26. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

27. Plaintiff has gone to Fivestar Supplements & Apparel and Crown Precious Metals on a number of occasions during the relevant statutory period, including December 2016, February 2017, May 2017, June 2017, August 2017 and September 2017.

Complaint

28. Fivestar Supplements & Apparel and Crown Precious Metals are facilities open to the public, places of public accommodation, and business establishments.

29. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of Fivestar Supplements & Apparel and Crown Precious Metals.

30. However, there were no parking spaces marked and reserved for persons with disabilities during any of plaintiff's visits.

31. Currently, there is not a single parking space marked and reserved for persons with disabilities.

32. On information and belief, Plaintiff alleges that the defendants once had an accessible parking space marked and reserved for persons with disabilities. Unfortunately, the parking space was allowed to fade or get paved over.

33. Defendants do not have policy or procedure to ensure that parking spaces reserved for persons with disabilities remain useable.

34. Paths of travel are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Fivestar Supplements & Apparel and Crown Precious Metals.

35. However, there was no accessible path of travel from the parking lot to the entrance of Fivestar Supplements & Apparel and Crown Precious Metals because of the bottom tracks of a rolling wrought iron gate.

36. Currently, there is no accessible path of travel from the parking lot to the entrance of Fivestar Supplements & Apparel and Crown Precious Metals because of the bottom tracks of a rolling wrought iron gate.

37. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Fivestar Supplements & Apparel.

Complaint

38. The transaction counter at Fivestar Supplements & Apparel was more than 36 inches high. In fact, the transaction counter at Fivestar Supplements & Apparel is 42 inches high.

39. There was no lowered, 36-inch or lower portion of the transaction counter at Fivestar Supplements & Apparel for use by persons with disabilities during any of Plaintiff's visits.

40. Currently, the transaction counter at Fivestar Supplements & Apparel is more than 36 inches high.

41. Currently, there is no lowered, 36-inch or lower portion of the transaction counter at Fivestar Supplements & Apparel for use by persons with disabilities.

42. On information and belief, plaintiff alleges that the transaction counter at Crown Precious Metals is inaccessible because it is more than 36 inches above the finish floor.

43. Plaintiff personally encountered these barriers.

44. These inaccessible conditions denied the plaintiff full and equal access and caused him difficulty and frustration.

45. The barriers existed during each of Plaintiff's visits in 2016 and 2017.

46. The plaintiff lives in the Sacramento area. He shops and patronizes businesses regularly in the area. He went inside Fivestar Supplements & Apparel and Crown Precious Metals in May 2017 and July 2017 and encountered the barriers. He visited Fivestar Supplements & Apparel and Crown Precious Metals on four other occasions but was deterred from going inside.

47. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in December 2016.

48. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in February 2017.

Complaint

49. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in May 2017.

50. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in June 2017.

51. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in August 2017.

52. Plaintiff visited Fivestar Supplements & Apparel and Crown Precious Metals once in September 2017.

53. Plaintiff would like to return and patronize Fivestar Supplements & Apparel and Crown Precious Metals but will be deterred from visiting until the defendants cure the violations.

54. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

55. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

56. For example, there are numerous paint/stripe companies that will come and stripe a parking stall and access aisle and install proper signage on rapid notice, with very modest expense, sometimes as low as $300 in full compliance with federal and state access standards.

57. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

Complaint

58. Plaintiff is and has been deterred from returning and patronizing Fivestar Supplements & Apparel and Crown Precious Metals because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Fivestar Supplements & Apparel and Crown Precious Metals as a customer once the barriers are removed.

59. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

60. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

61. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this

Complaint

complaint.

62. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).
   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."
   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

63. Any business that provides parking spaces must provide a sufficient number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. The required minimum number of handicap parking spaces is dependent on the total number of parking spaces available. *Id*. According to

Complaint

the 1991 Standards, if a parking lot has 1-25 spaces, it must have at least 1 accessible parking space. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 1-25 spaces must have at least 1 accessible space and 1 of them must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

64. Here, the failure to provide accessible parking spaces is a violation of the ADA.

65. Under the ADA, there must be an accessible route within the boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2. The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* The accessible route must be at least 36 inches in width except at doors. 1991 Standards § 4.3.3; 2010 Standards § 403.5.1.

66. Here, the failure to provide an accessible path of travel to the entrance is a violation of the law.

67. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

68. Here, no such accessible transaction counter has been provided in violation of the ADA.

Complaint

69. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

70. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

71. Given its location and options, plaintiff will continue to desire to patronize Fivestar Supplements & Apparel and Crown Precious Metals but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

72. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

73. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

74. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

75. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal

Complaint

injury greater than the amount of the statutory damages.

**PRAYER**:

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 19, 2018          CENTER FOR DISABILITY ACCESS

By: *Isabel P. M~* 
_____
Isabel Masanque, Esq.
Attorney for plaintiff

Complaint